**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LAWFARE INSTITUTE,<br><br>     Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>STATE and MARCO RUBIO, in his official<br>capacity as Secretary of State,<br><br>     Defendants. | Civil Action No. 1:26-cv-798 |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

i

**TABLE OF CONTENTS**

I.    Introduction ........................................................................................................ 1

II.   Background ........................................................................................................ 1

    A.    Statutory Background ........................................................................... 1

    B.    Factual Background ............................................................................. 3

III.  Standard of Review ........................................................................................... 4

    A.    Rule 12(b)(1) ....................................................................................... 4

    B.    Rule 12(b)(6) ....................................................................................... 4

IV.   Argument ........................................................................................................... 5

    A.    Plaintiff Does Not Plausibly Allege The Existence of a Decision or
        Policy of Non-Compliance with the Obligations of the Act .................................. 6

    B.    Plaintiff Does Not Plausibly Allege Injury-In-Fact to Support Its
        Standing ............................................................................................... 7

    C.    Plaintiff Does Not Sufficiently Allege An Imminent Threat of Future
        Harm to Establish Standing for Prospective Relief ................................................. 11

    D.    Plaintiff Does Not Plausibly Allege that a Court Order is Likely to Redress
        Its Alleged Harms .............................................................................. 12

    E.    Plaintiffs Do Not Challenge Final Agency Action ................................. 13

    F.    Plaintiff Does Not State A Claim for which Relief May Be Granted as
        to Counts I & II .................................................................................. 17

    G.    Plaintiff Does Not State A Claim For Which Relief May Be Granted as to
        Count III .............................................................................................. 20

    H.    Plaintiff Is Not Entitled to Mandamus Relief Under Count IV .......................... 22

V.    Conclusion ....................................................................................................... 23

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*AFL-CIO v. DOL*,
No. 25-cv-339, 2026 U.S. Dist. LEXIS 70099 (D.D.C. Mar. 31, 2026) .................................. 14

*Alegent Health v. Sebelius*,
34 F. Supp. 3d 160 (D.D.C. 2014) ....................................................................................... 21

*Al-Zahrani v. Rodriguez*,
669 F.3d 315 (D.C. Cir. 2012) ............................................................................................... 4

*Am. Butterfly Ass'n v. Wolf*,
977 F.3d 1244 (D.C. Cir. 2020) ............................................................................................. 5

*Am. Nat'l Ins. Co. v. FDIC*,
642 F.3d 1137 (D.C. Cir. 2011) ............................................................................................. 4

*Arabzada v. Donis*,
725 F. Supp. 3d 1 (D.D.C. 2024) ........................................................................................... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................ 5

*Babaei v. U.S. Dep't of State*,
725 F. Supp. 3d 20 (D.D.C. 2024) ....................................................................................... 19

*Bagherian v. Pompeo*,
442 F. Supp. 3d 87 (D.D.C. 2020) ....................................................................................... 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................ 5

*Bennett v. Spear*,
520 U.S. 154 (1997) .............................................................................................................. 14

*Browning v. Clinton*,
292 F.3d 235 (D.C. Cir. 2002) ............................................................................................... 5

*Campaign for Accountability v. United States Department of Justice*,
155 F.4th 724 (D.C. Cir. 2025) ........................................................................................ 7, 10

*City of New Bedford v. Locke, Civ. A.*,
No. 10-10789, 2011 WL 2636863 (D. Mass. June 30, 2011), aff'd sub nom., Lovgren v.
Locke, 701 F.3d 5 (1st Cir. 2012) ........................................................................................ 21

*Conley v. Gibson*,
  355 U.S. 41 (1957) ........................................................................................................... 5

*Ctr. For Biological Diversity v. U.S. DOI*,
  144 F.4th 296 (D.C. Cir. 2025) ................................................................................10, 11

*Da Costa v. Immigr. Inv. Program Office*,
  80 F.4th 330 (D.C. Cir. 2023) ........................................................................................ 18

*Daimler Chrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ......................................................................................................... 4

*Dearth v. Holder*,
  641 F.3d 499 (D.C. Cir. 2011) ....................................................................................... 12

*Drs. For. Am. v. OPM*,
  793 F. Supp. 3d 112 (D.D.C. 2025) ......................................................................... 14, 15

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ......................................................................................... 4

*Friends of Animals v. Jewell*,
  828 F.3d 989 (D.C. Cir. 2016) ......................................................................................... 7

*Growth Energy v. EPA*,
  5 F.4th 1 (D.C. Cir. 2021) ..............................................................................................11

*Harris v. D.C. Water & Sewer Auth.*,
  791 F.3d 65 (D.C. Cir. 2015) ........................................................................................... 5

*Ho v. Garland*,
  106 F.4th 47 (D.C. Cir. 2024) .......................................................................................... 5

*Hyatt v. OMB*,
  908 F.3d 1165 (9th Cir. 2018) ....................................................................................... 21

*In re Core Commc'ns, Inc.*,
  531 F.3d 849 (D.C. Cir. 2008) ....................................................................................... 19

*In re Western Coal Traffic League*,
  108 F.4th 905 (D.C. Cir. 2024) ................................................................................. 22, 23

*Ipsen Biopharmaceuticals, Inc. v. Becerra, Case*,
  No. 20-cv-2437, 2021 U.S. Dist. LEXIS 183825 (D.D.C. Sept. 24, 2021) ..................... 7

*Jenkins v. Howard Univ.*,
  123 F.4th 1343 (D.C. Cir. 2024) ...................................................................................... 4

*Kentucky v. Graham,*
  473 U.S. 159 (1985) ................................................................................................................ 13

*Leopold v. Manger,*
  630 F. Supp. 3d 71 (D.D.C. 2022) .......................................................................................... 4

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) ................................................................................................................ 15

*Mashpee Wampanoag Tribal Council, Inc. v. Norton,*
  336 F.3d 1094 (D.C. Cir. 2003) ............................................................................................ 20

*MediNatura, Inc. v. FDA,*
  998 F.3d 931 (D.C. Cir. 2021) .............................................................................................. 14

*Micei Int'l v. Dep't of Commerce,*
  613 F.3d 1147 (D.C. Cir. 2010) .............................................................................................. 4

*Nat'l Ass'n of Home Builders v. Norton,*
  415 F.3d 8 (D.C. Cir. 2005) .................................................................................................. 16

*Nat'l Mining Ass'n v. McCarthy,*
  758 F.3d 243 (D.C. Cir. 2014) .............................................................................................. 16

*Nat'l Sec. Archive v. CIA,*
  104 F.4th 267 (D.C. Cir. 2024) ............................................................................................... 7

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004) .......................................................................................................... *passim*

*Ohio Stands Up! v. HHS,*
  564 F. Supp. 3d 605 (N.D. Ohio 2021) ........................................................................... 21, 22

*Postal Police Officers Ass'n v. United States Postal Serv.,*
  719 F. Supp. 3d 56 (D.D.C. 2024) .......................................................................................... 5

*Skalka v. Kelly,*
  246 F. Supp. 3d 147 (D.D.C. 2017) ...................................................................................... 23

*Telecomms. Rsch. & Action Ctr. v. FCC,*
  750 F.2d 70 (D.C. Cir. 1984) ................................................................................................ 20

*Thomas v. Principi,*
  394 F.3d 970 (D.C. Cir. 2005) ................................................................................................ 4

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ....................................................................................................... 7, 8, 12

iv

*Trichell v. Midland Credit Mgmt., Inc.*,
    964 F.3d 990 (11th Cir. 2020) ........................................................................... 8

*Util. Air Reg. Group v. EPA*,
    744 F.3d 741 (D.C. Cir. 2014) ......................................................................... 21

*Valero Energy Corp. v. EPA*,
    927 F.3d 532 (D.C. Cir. 2019) .................................................................... 16, 17

*Venetian Casino Resort, L.L.C. v. EEOC*,
    530 F.3d 925 (D.C. Cir. 2008) ......................................................................... 14

*Vietnam Veterans of Am. & Veterans of Modern Warfare v. Shinseki*,
    599 F.3d 654 (D.C. Cir. 2010) ......................................................................... 23

*W. Org. of Res. Councils v. Zinke*,
    892 F.3d 1234 (D.C. Cir. 2018) ....................................................................... 22

*Weissman v. AMTRAK*,
    21 F.4th 854 (D.C. Cir. 2021) ........................................................................... 7

*Williams v. Lew*,
    819 F.3d 466 (D.C. Cir. 2016) ........................................................................... 7

## Statutes

1 U.S.C. § 112b ....................................................................................... 1, 3, 16

1 U.S.C. § 112b(a)(1) ....................................................................................... 2

1 U.S.C. § 112b(a)(1)(A)(iii) ............................................................................. 3

1 U.S.C. § 112b(b)(1) ....................................................................................... 8

1 U.S.C. § 112b(b)(2) ....................................................................................... 8

1 U.S.C. § 112b(b)(3) ....................................................................................... 9

1 U.S.C. § 112b(d) ...................................................................................... 3, 13

1 U.S.C. § 112b(a)(1)(B) ................................................................................... 2

1 U.S.C. § 112b(k)(5)(A)(ii) ............................................................................ 15

1 U.S.C. § 112b(k)(5)(B) ..................................................................... 10, 13, 16

5 U.S.C. § 702 ................................................................................................ 21

5 U.S.C. § 706(1) ............................................................................................ 18

v

44 U.S.C. § 3506(d)(1) ................................................................................................... 22

44 U.S.C. § 3512(b) ....................................................................................................... 21

## Rules

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 4

## Administrative & Executive Orders

22 C.F.R. § 181(2).......................................................................................................... 9

22 C.F.R. § 181.2 ........................................................................................................... 9

22 C.F.R. § 181.5 ........................................................................................................... 3

22 C.F.R. § 181.4 ....................................................................................................... 3, 9

22 C.F.R. § 181.9(d)....................................................................................................... 9

## I.    Introduction

As part of their obligations under the Case-Zablocki Act ("the Act"), 1 U.S.C. § 112b, Defendants, the United States Department of State and Marco Rubio, in his official capacity as Secretary of State, are required to make certain international agreements and non-binding instruments, along with supporting information, available to the public online within a specific timeframe. These requirements appear straightforward, but in reality require substantial agency time, resources, and coordination to collect the information and make the necessary determinations as to what agreements and instruments are covered by the Act, and further which covered instruments are subject to publication requirements along with related information. Plaintiff, Lawfare Institute, alleges that Defendants have adopted a decision or policy to abandon their obligations to make information public under the Act since January of 2025 and brings suit seeking to compel compliance with the Act's requirements.

Plaintiff's own allegations, however, establish that there is no such decision or policy and that Defendants have continued to comply with the Act. Plaintiff cannot establish this Court's jurisdiction or Plaintiff's causes of action under the Administrative Procedure Act ("APA") through this nonexistent decision. Nor does the Complaint sufficiently allege the existence of any discrete violations of the Act or of the Paperwork Reduction Act ("PRA") to salvage Plaintiff's case. For the reasons explained herein, Plaintiff's Complaint must be dismissed.

## II.    Background

### A.  Statutory Background

Plaintiff brings suit pursuant to 1 U.S.C. § 112b, and specifically as to the publication requirements of subsections 112b(b)(1) & (2).

Section 112b establishes a framework through which the State Department provides Congressional Leadership and appropriate congressional committees (the committees on foreign

1

relations) information related to international agreements and qualifying non-binding instruments not less than once a month. 1 U.S.C. § 112b(a)(1). The statutorily required information includes the text of agreements and qualifying non-binding instruments and a detailed description of the legal authority relied upon to authorize an international agreement or authorize the operation of a qualifying non-binding instrument. *Id.* § 112b(a)(1)(A)(iii). The Act requires reporting of a list of agreements and qualifying non-binding instruments "signed, concluded, or otherwise finalized during the prior month." *Id.* § 112b(a)(1)(A)(i). If there are updates or additional authorities, *see* Id. §§ 112b(a)(1)(B)(ii)-(iii), that must also be provided to Congress in conjunction with a separate list of "international agreements that entered into force and qualifying non-binding instruments that became operative … during the prior month." *Id.* § 112b(a)(1)(B)(i).

Section 112b(b)(1) provides that "[n]ot later than 120 days after the date on which an international agreement enters into force, the Secretary shall make the text of the agreement" and the other information required to be provided to Congress in §§ 112b(a)(1)(A)(iii) & (B)(iii) "available to the public on the website of the Department of State." Similarly, § 112b(b)(2) provides that "[n]ot less frequently than once every 120 days, the Secretary shall make the text of each qualifying non-binding instrument that became operative during the preceding 120 days" and the other information required to be provided to Congress in §§ 112b(a)(1)(A)(iii) & (B)(iii) "available to the public on the website of the Department of State." Section 112b(b)(3) describes categories of international agreements and qualifying non-binding instruments excepted from these publication obligations, and § 112b(k)(5) defines the parameters of a "qualifying" non-binding instrument.

Identification of a non-binding instrument as a qualifying non-binding instrument is informed by the criteria laid out in section 112b(k)(5) as implemented through 22 C.F.R. § 181.4,

and the determination of whether an instrument is qualifying is made by the relevant bureau or agency responsible for negotiation and conclusion of the instrument. 22 C.F.R. § 181.5. Section 112b(d) requires any department or agency that enters into an international agreement or qualifying non-binding arrangement to provide the text and related information to the Secretary, no later than 15 days after signature or conclusion, and 112b(e)(1) requires each department or agency entering into international agreements or qualifying non-binding instruments to designate a Chief International Agreements Officer to have responsibility for that department or agency's compliance.

### B. Factual Background

The Act, as originally enacted in 1972, established congressional reporting requirements for Defendants as to international agreements. Compl. ¶ 45. The Act was amended several times including most recently in 2022, when Congress added the publication requirements described in 1 U.S.C. §112b(b). *See id.* ¶¶ 48, 58-59. Defendants subsequently promulgated implementing regulations establishing, inter alia, the criteria for determining which government actions were covered by the Act as international agreements or qualifying non-binding instruments. *See id.* ¶¶ 69-72. Defendants posted the texts and accompanying information for various international agreements and qualifying non-binding agreements between October 2023 and December 2024. *See id.* ¶¶ 73-75, 77-79. Between February and July 2025, the State Department was subject to significant restructuring including a reduction-in-force. *See id.* ¶¶ 80-82, 84. During and after the restructuring and reduction-in-force, Defendants posted the texts and accompanying information for various international agreements and qualifying non-binding agreements between January 2025 and March 2026. *See id.* ¶¶ 87-89.

3

### III.   Standard of Review

#### A.   Rule 12(b)(1)

Federal courts are courts of "limited subject-matter jurisdiction" and have the power "to decide only those cases over which Congress grants jurisdiction." *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012) (citing *Micei Int'l v. Dep't of Com.*, 613 F.3d 1147, 1151 (D.C. Cir. 2010)). "Absent subject-matter jurisdiction over a case, the court must dismiss it." *Leopold v. Manger*, 630 F. Supp. 3d 71, 76 (D.D.C. 2022).

To survive a Rule 12(b)(1) motion, the party asserting subject matter jurisdiction—here Plaintiff—bears "the burden of establishing it." *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1347 (D.C. Cir. 2024) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). In considering assertions of subject matter jurisdiction, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). At the same time, however, courts "need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept a plaintiff's legal conclusions." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 9 (D.D.C. 2024) (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)).

#### B.   Rule 12(b)(6)

Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for Plaintiff's failure to state a claim upon which relief can be granted. Under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

4

*Twombly*, 550 U.S. 544, 570 (2007)). In other words, Rule 12(b)(6) "tests the legal sufficiency" of a plaintiff's claims, and dismissal is warranted where a plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). In supporting their claims, plaintiffs must go beyond "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" as such barebones pleadings "do not suffice." *Ashcroft*, 556 U.S. at 678.

Movants—here Defendants—bear the burden of establishing Rule 12(b)(6) dismissal is appropriate. *Postal Police Officers Ass'n v. U.S. Postal Serv.*, 719 F. Supp. 3d 56, 61 (D.D.C. 2024). In reviewing a motion to dismiss, the Court takes "the operative complaint's well-pleaded factual allegations as true and draw[s] all reasonable inferences in the [plaintiff's] favor." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020). But the Court's "role is not to speculate about which factual allegations are likely to be proved after discovery." *Ho v. Garland*, 106 F.4th 47, 55 (D.C. Cir. 2024) (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015)). Rather, it is "to decide whether [a plaintiff's] 'alleged facts that, taken as true, render his claim . . . plausible.'" *Id.* (quoting *Harris*, 791 F.3d at 70).

## IV.    ARGUMENT

Plaintiff's claims rely on the supposed existence of an across-the-board decision or policy by Defendants to refuse to comply with the publication requirements of the Act, resulting in an informational injury to Plaintiff. Because the Complaint fails to plausibly allege the existence of such a decision or policy, Plaintiff can neither establish standing to bring this suit nor state a claim for which relief may be granted for any of its causes of action. To the extent Plaintiff asserts any failures to comply with the Act as to individual international agreements or qualifying

5

non-binding agreements, the Complaint does not include sufficient specific allegations to establish standing or to state a claim.

### A. Plaintiff Does Not Plausibly Allege The Existence of a Decision or Policy of Non-Compliance with the Obligations of the Act

The principal theory of Plaintiff's complaint is that Defendants have made an "unlawful decision to abandon [their] statutory obligations" under the Act to publish information about international agreements. Compl. ¶ 13; *see also id.* ¶ 85 (alleging Defendants' "abandonment of [their] responsibility to maintain the international agreements website"); *id.* ¶ 106 (alleging "Defendants' decision to abandon the timely and proper maintenance and operation of the Case Act international agreements websites"); *id.* ¶ 90 (alleging Defendants' "refusal to comply with its amended Case Act obligations and properly maintain its Case Act websites"). Defendants dispute the existence of such a decision or policy, but more importantly for the instant motion, the allegations of Plaintiff's Complaint on their face do not plausibly support the existence of such an across-the-board decision or policy. Despite Plaintiff's assertion that Defendants "abandoned" their statutory obligations since January 2025, Plaintiff also alleges that during the relevant time period Defendants made "sporadic postings to the Case Act websites," *id.* ¶ 10, "[b]y July 2025…posted some agreements to the websites, and the corresponding websites containing legal authority information" *id.* ¶ 87, "add[ed] information in December 2025 and January 2026 for some [binding] agreements," *id.* ¶ 88, and "add[ed] text and information in late 2025 and early 2026 for a small set of [non-binding] agreements," *id.* ¶ 89. Indeed, although the specific numbers are not legally relevant, Plaintiff asserts that between January and July of 2025 Defendants published the text of 20 international agreements, other information for 39 international agreements, and the text and information for 24 non-binding instruments. *Id.* ¶ 87. Thus, whether or not Plaintiff has sufficiently alleged that Defendants fulfilled the specific

obligations of the statute in every instance, *see infra*, it has clearly failed to plausibly allege the existence of a comprehensive decision or policy of non-compliance.

### B. Plaintiff Does Not Plausibly Allege Injury-In-Fact to Support Its Standing

"[T]he irreducible constitutional minimum of standing contains three elements: (1) the plaintiff must have suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) there must exist a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Weissman v. AMTRAK*, 21 F.4th 854, 857 (D.C. Cir. 2021) (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 991-92 (D.C. Cir. 2016)) (cleaned up). Moreover, to the extent a plaintiff seeks prospective relief, it "must establish an ongoing or future injury that is certainly impending and may not rest on past injury." *Id.* (quoting *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016)) (cleaned up).

Plaintiff's claims rely on an alleged informational injury. *See* Compl. ¶¶ 96-103. To establish an informational injury a plaintiff must "show '(1) it has been deprived of information that a statute requires the government to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure.'" *Campaign for Accountability v. U. S. Dep't of Justice*, 155 F.4th 724, 733 (D.C. Cir. 2025) (quoting *Nat'l Sec. Archive v. CIA*, 104 F.4th 267, 272 (D.C. Cir. 2024)). Further, Plaintiff "must establish 'downstream consequences' from its failing to receive the information in question." *Ipsen Biopharmaceuticals, Inc. v. Becerra*, No. 20-cv-2437, 2021 U.S. Dist. LEXIS 183825 at *26 (D.D.C. Sep. 24, 2021) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021)); *see also TransUnion*, 594 U.S. at 442 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990,

7

1004 (11th Cir. 2020)) ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'").

As explained above, Plaintiff's claims rely on its allegation, directly contradicted by the other allegations of its Complaint, that Defendants have abandoned their responsibilities to comply and will not comply going forward with the publication requirements of the Act. Consequently, Plaintiff's allegations of harm assume without providing the necessary supporting facts that (1) Plaintiff is entitled to receive any and all information about agreements and qualifying non-binding instruments that is not presently on Defendants' public website, and (2) any resource expenditure Plaintiff has made related to international agreements or non-binding instruments is causally linked to the denial of information that should have been published. *See* Compl. ¶¶ 96-103.

Plaintiff's allegations obscure the fact that the Act places numerous conditions and exceptions on the publication of agreements and qualifying non-binding instruments. First, Defendants have no obligation to publish any information before 120 days from the date a binding international agreement "enters into force," which date, as recognized in the statute, may be different from the date when an agreement is concluded or signed. *See* 1 U.S.C. § 112b(b)(1). Similarly, Defendants have no obligation to publish any information about qualifying non-binding instruments more frequently than once every 120 days with respect to those that became "operative" within the preceding 120 days, which date may be different from the date a non-binding instrument is signed or otherwise concluded. *See id.* § 112b(b)(2). Second, the Act's publication obligation does not apply to various categories of international agreements and qualifying non-binding instruments including those that have a national security classification or are otherwise exempt from disclosure (e.g., would not be releasable under FOIA), are related to

8

certain  military activities and programs, establish the terms of grant or similar foreign assistance, are related to the specification of technical project details, or are otherwise published elsewhere. *See* 1 U.S.C. § 112b(b)(3); *see also* 22 C.F.R. § 181.9(d) (outlining categories of international agreements and qualifying non-binding instruments that will not be published). Third, only agreements and instruments that are covered by the Act are publishable.  *See*  22 C.F.R. § 181(2) (outlining criteria for determining whether any document, statement, etc. is an "international agreement" for purposes of the Act).[1]  In particular, non-binding instruments are only "qualifying" and therefore covered by the Act and subject to the publication obligations if (1) they "could reasonably be expected to have a significant impact on the foreign policy of the United States," or (2) are "the subject of a written communication from the Chair or Ranking Member of either of the appropriate congressional committees to the Secretary." 1 U.S.C. § 112b(k)(5)(A)(ii); *see also* 22 C.F.R. § 181.4 (outlining further criteria for determining whether a non-binding instrument is "qualifying" for purposes of the Act). Further, non-binding instruments are excluded from the definition of  "qualifying non-binding instruments" if they become operative or are implemented "pursuant to the authorities relied upon by the Department

---

[1] An international agreement must have two or more parties that are a state, state agency, or intergovernmental organization, and be intended to be legally binding under international law. Other criteria with respect to the significance of the agreement and its specificity may also be considered. *See* 22 C.F.R. § 181.2. In contrast, non-binding instruments are intended to have political or moral weight rather than legal force, and do not give rise to legal rights or obligations under any law, and may be concluded with a broader range of foreign entities, including non-state actors. *Id.* §§ 181.4(b)(1) and (2). Factors considered in assessing a non-binding instrument for "significant impact on the foreign policy of the United States" include: (1) whether it is of importance to the U.S. relationship with another country, such as by addressing a significant new policy or initiative rather than ongoing activities or cooperation; (2) it affects rights or responsibilities of individuals within the United States; (3) it impacts state laws; (4) it has budgetary or appropriations impact; (5) it requires changes to U.S. law; (6) it presents a new commitment or risk for the entirety of the United States; and (7) it is of Congressional or public interest. *Id.* § 181.4(b)(3).

9

of Defense, the Armed Forces of the United States, or any element of the intelligence community." 1 U.S.C. § 112b(k)(5)(B).

Consequently, despite the seemingly mandatory publication language of subsections b(1) and b(2) of the Act, Plaintiff has no legal entitlement to receive information related to a diverse group of possible international agreements and non-binding instruments. Each agreement and instrument must be individually assessed as to whether it is covered by the Act and as to whether it may or must be published and at what time.[2] For information to which a party has no legal entitlement, that party cannot be harmed in the manner Congress intended to prevent by denial of access to that information. *See Campaign for Accountability*, 155 F.4th at 733. Had Plaintiff in fact identified the existence of an across-the-board decision or policy to *never* comply with the obligations of the Act, perhaps an informational injury would be inevitable, and standing could have been assumed. However, in the absence of plausible allegations of such a decision or policy, Plaintiff cannot show that it has been injured unless it can point to specific international agreements or qualifying non-binding instruments that (1) it is actually entitled to receive information about under the Act, (2) for which that information has actually been withheld from publication, and (3) for which specifically Plaintiff has actually incurred some costs or other impairments to its core functions. *See, e.g., Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 144 F.4th 296, 311 (D.C. Cir. 2025) ("Even if the challenged permits all suffer from the same legal defect, however, the Constitution requires Plaintiffs to demonstrate an injury linked to each distinct federal action.").

---

[2] For this reason, Plaintiff's allegations concerning the comparative volume or frequency of posting to Defendants' websites prior to January 2025, *see* Compl. ¶¶ 73-79, are not legally relevant.

The allegations of Plaintiff's complaint are insufficient to satisfy those requirements, and they have therefore failed to allege an injury-in-fact and establish standing to bring this suit. The only potential international agreements that Plaintiff alleges with any specificity have been withheld or delayed are those described in paragraphs 91 and 93 of their complaint.[3] But, the Complaint does not allege even for these possible agreements the necessary elements to establish (1) that Plaintiff is entitled to the publication of the text and information about those specific agreements and (2) that Plaintiff has suffered actual harm because Defendant did not publish that specific information. In other words, "Plaintiff[] ha[s] failed to show the requisite causal link between 'a substantive government decision that may have been wrongly decided' and 'the plaintiff's particularized injury' needed to support their standing." *Ctr. For Bio. Diversity*, 144 F.4th at 312 (quoting *Growth Energy v. EPA*, 5 F.4th 1, 27 (D.C. Cir. 2021)); *see also id.* (Plaintiffs "do not explain how they might still have standing even if their more expansive theory fails" because they have not "draw[n] the concrete links between individual injuries and individual [agency decisions]…."). Even if the Court credits Plaintiff's vague allegations of organizational harm in this procedural posture, *see* Compl. ¶¶ 102-103, it has not alleged the necessary link of particular harm to particular agency action.

### C. Plaintiff Does Not Sufficiently Allege An Imminent Threat of Future Harm to Establish Standing for Prospective Relief

Additionally, because Plaintiff has not plausibly alleged the existence of an across-the-board decision or policy not to comply with the obligations of the Act, it has failed to sufficiently allege standing to seek prospective relief. Plaintiffs must "demonstrate standing for each claim

---

[3] Plaintiff appears to allege that each "agreement" in these paragraphs is an "international agreement" as opposed to a "qualifying non-binding instrument" as defined by the Act and they will therefore be analyzed under that framework. These same "agreements" are summarily referenced in paragraphs 9 & 10 of the complaint.

that they press and for each form of relief that they seek." *TransUnion*, 594 U.S. at 431. Plaintiff here asks that the Court "[o]rder Defendants to post all overdue agreement text and accompanying legal authority information within five business days, and to timely post all covered agreement text and accompanying legal authority information on a forward-going basis…." Compl. at 39 (Prayer for Relief). But even assuming Plaintiff had sufficiently alleged individual instances of past non-compliance, which it has not, "past injuries alone are insufficient to establish standing" for future relief. *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). As explained *supra*, in the absence of any comprehensive decision or policy of non-compliance with the Act, Plaintiff must sufficiently allege individual instances of non-compliance. For alleged future non-compliance, Plaintiff must not only sufficiently allege entitlement to information concerning specific, individual international agreements or qualifying non-binding instruments, but also that there is an imminent threat that they will be denied such legally required information. *See Dearth,* 642 F.3d at 501. But Plaintiff's allegations about future non-compliance are purely speculative and may not be credited by this Court. On its face the Complaint alleges that during the relevant period some agreements and instruments and related information were published and some were not. Although Plaintiff alludes generally to several agreements it believes will not be published, it alleges no specific basis for either its entitlement to that particular information, or for its belief that, assuming those agreements are subject to publication under the Act, Defendants will not publish them. *See* Compl. ¶ 95. These allegations clearly fall far below the standing bar for prospective relief.

### D. Plaintiff Does Not Plausibly Allege that a Court Order is Likely to Redress Its Alleged Harms

It is also not "likely" that Plaintiff's alleged harms will be effectively redressed by an order of this Court because the Defendants cannot be compelled to publish information that they

12

do not possess. Plaintiff seeks relief against the State Department only,[4] but international agreements and non-binding instruments can be entered into by many Executive Branch entities, including the Office of the President. *See* 1 U.S.C. § 112b(d) & (e). Any entity that enters into such an agreement or qualifying non-binding instrument is required by the Act to provide texts and related information to the State Department on a specific timeline, which may subsequently be reported to Congress and published. *See id.* § 112b(d). However, providing such information is an obligation on other entities who are not parties to this case, and it cannot be enforced by or against the State Department. *See id.* Plaintiffs have not alleged that as to any of the individual agreements they allege are improperly unpublished (or in the future may improperly be withheld from publication), *see supra*, the State Department has custody of the statutorily required information or could produce it subject to a court order. Therefore, it is merely speculative that an order granting Plaintiff relief against Defendants would actually redress its alleged injuries.

### E.  Plaintiffs Do Not Challenge Final Agency Action

Independent of Plaintiff's failure to establish standing, and therefore this Court's jurisdiction, it has also failed to state a claim under the APA. "The APA only provides for judicial review of final agency action…[i]f there is no final agency action, a plaintiff simply has no cause of action under the APA." *Drs. for. Am. v. OPM*, 793 F. Supp. 3d 112, 137 (D.D.C. 2025) (citations omitted). "A 'final agency action' within the meaning of the APA is 'the consummation of the agency's decisionmaking process…by which rights or obligations have been determined or from which legal consequences flow.'" *Venetian Casino Resort, L.L.C. v. EEOC*, 530 F.3d 925,

---

[4] A suit against the Secretary of State in his official capacity is a suit against the State Department. *See Kentucky. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and "the real party in interest is the entity.").

931 (D.C. Cir. 2008) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). "To invoke the APA, plaintiffs must identify 'discrete' or 'particular' actions that the agency took." *AFL-CIO v. DOL*, No. 25-cv-339, 2026 U.S. Dist. LEXIS 70099, at *33 (D.D.C. Mar. 31, 2026) (quoting *Norton v. S. Utah Wilderness All. ("SUWA")*, 542 U.S. 55, 64 (2004)). "Wholesale objections to an agency's operations do not suffice because they fail to clearly define the scope of the controversy and raise grievances resolvable only by Congress." *Id.; see also SUWA*, 542 U.S. at 64 ("The limitation to discrete agency action precludes…broad programmatic attack[s].")

For the same reasons explained *supra* at 8-9, Plaintiff has failed to identify or sufficiently allege a discrete decision or policy of across-the-board non-compliance with Defendants' obligations under the Act. On the face of the Complaint, it is clear that there is no such decision or policy, or to put it in terms of finality, there is no across-the-board decision that represents the consummation of the agency's decisionmaking process. Plaintiffs admit that Defendants have continued to make Act-compliant publications to their websites, and therefore even if there were some unstated plan to wholly abandon these obligations it is not in force and is at most "of a merely tentative or interlocutory nature." *See MediNatura, Inc. v. FDA*, 998 F.3d 931, 938 (D.C. Cir. 2021) (quoting *Bennett*, 520 U.S. at 178)).

It is apparent that what Plaintiff actually seeks is to compel Defendants to be more consistent and complete, in its view, in their compliance with the Act. *See, e.g.*, Compl. ¶ 94 ("[T]he websites have lacked, and continue to lack, timely and complete international agreements information."); *id.* ¶ 111 (alleging Defendants are not fulfilling "these statutory obligations in a timely and fulsome manner"). But the APA "is an avenue for challenging discrete agency actions – not for 'seek[ing] wholesale improvement of' agencies' compliance with statutory schemes." *Drs. for Am.*, 793 F. Supp. 3d at 140 (quoting *Lujan v. Nat'l Wildlife Fed'n*,

14

497 U.S. 871, 891 (1990)). Like in *Lujan*, the alleged "decision" of the Defendants to abandon the obligations of the Act is in fact "a moniker the plaintiff…used for [Defendants'] 'continuing (and thus constantly changing) operations' in executing its various statutory responsibilities." *Id.* at 140. Plaintiff cannot "identify specific actions [it] dislike[s], group them together, call them a 'program,' and seek collective APA review." *Id.* at 140-41. It is apparent on the face of the complaint that, at most, Plaintiff alleges that Defendants have failed to timely publish the required information for a handful of individual agreements or qualifying non-binding instruments (none of which Plaintiff has supported with sufficient factual allegations). *See supra*. Controlling precedent forbids review of an entire program on the basis of such allegations because "it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management." *Drs. for Am.*, 793 F. Supp. 3d at 140 (quoting *SUWA*, 542 U.S. at 66-67).

To the extent Plaintiff alleges that Defendants failed to publish statutorily required information for the individual "agreements" identified in paragraphs 91 and 93 of their Complaint, this also does not constitute final agency action. As to the first prong, the Complaint alleges no facts to support an assertion that publication decisions have been made about any of these specific agreements. As explained above, Plaintiff has alleged no facts to support if or when these particular agreements were required to be published. Nor has Plaintiff alleged any facts to indicate that Defendants have even undertaken a decision-making process with regard to these agreements. If there is indeed an obligation to publish any of these specific agreements, and information related to them, that process may simply be delayed, *see infra*.

As to the second prong, assuming for purposes of this question only that Plaintiff had sufficiently alleged entitlement to the publication of any of these specific "agreements", *see*

15

*supra*, such alleged individual failures to publish still do not plausibly establish final agency action. "That prong looks to the 'actual legal effect (or lack thereof) of the agency action in question on regulated entities.'" *Valero Energy Corp. v. EPA*, 927 F.3d 532, 536 (D.C. Cir. 2019) (quoting *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014)). As an initial matter, Plaintiff is not itself the regulated party under the Act, but merely a potential recipient of information generated by the regulated party, Defendants. *See generally*, 1 U.S.C. § 112b. Moreover, any such individual publication decisions, even if wrongly decided, in no way alter the overall obligations of the Defendants or entitlements of the Plaintiff under the Act. *See Valero Energy Corp. v. EPA*, 927 F.3d at 536 (the challenged agency action "imposes no obligations, prohibitions, or restrictions; it compels action by neither the recipient nor the agency.") (citation omitted); *see also, e.g.*, *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) ("[I]f the practical effect of the agency action is not a certain change in the legal obligations of a party, the action is non-final for purposes of judicial review."). Indeed, these alleged individual determinations "leave[] the world just as [they] found it." *Valero Energy Corp.*, 927 F.3d at 536; *see also, e.g., Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Defense*, 990 F.3d 834, 839 (4th Cir. 2021) ("Final agency action is a term of art that does not include all [agency] conduct such as, for example…operating a program…but instead refers to an agency's [final] determination of rights and obligations….") (citation omitted). Plaintiff may argue that this Circuit recognizes finality in certain cases based on the practical effect of an agency action, but the circumstances of those cases are inapposite here. Denial of access to specific individual pieces of information, whether rightly or wrongly, is not comparable to agency action imposing an "immediate and significant practical burden" on a regulated party or "impos[ing] obligations by chicanery" despite disclaiming any legal force. *Valero Energy Corp.*, 927 F.3d at 537 (citation

16

omitted); *see id.* (explaining this Circuit's precedents related to the practical versus legal effect of agency actions). At bottom, even if Plaintiff had sufficiently alleged that Defendants had failed to provide it with specific information as to particular international agreements, those individual decisions by Defendant with respect to publication would not constitute final agency action because they do not in any way alter the relationship between the parties, the legal obligations of the Defendants to comply with the Act, or any legal entitlement the Plaintiff carries under the Act.

Finally, as to any alleged future failures to publish statutorily required information, by definition there has not been any final agency action. As explained, in the absence of an across-the-board decision or policy to refuse to comply with the Act, Plaintiff can only attempt to challenge individual decisions not to publish texts and information related to specific international agreements or qualifying non-binding instruments. Since it is inherently the case that such decisions have not yet been made, Plaintiff's forward-looking claims fail at the first prong of the finality test.

### F. Plaintiff Does Not State a Claim for which Relief May Be Granted as to Counts I & II

Even if Plaintiff's Complaint did not suffer from the threshold issues described above, it would still fail to state a claim under the APA.

Plaintiff's Count I asserts that Defendants have acted contrary to law through their "decision to abandon the timely and proper maintenance and operation of the Case Act international agreements websites." Compl. ¶ 106. As described at length above, *see supra*, Plaintiff has not plausibly alleged the existence of any such across-the-board decision or policy of non-compliance with the obligations of the Act, and has, at most, alleged inconsistent or

delayed compliance in certain cases. Thus, Plaintiff cannot state a claim that Defendants have acted contrary to the Act in this manner.

Plaintiff's Count II asserts that Defendants have unlawfully withheld or unreasonably delayed compliance with the Act by "no longer fulfilling these statutory obligations in a timely and fulsome manner, and abandoning the posting of international agreement text or accompanying legal information for a range of covered binding and non-binding international agreements." Compl. ¶ 111. As explained in detail above, in addition to not plausibly alleging the existence of an across-the-board policy of non-compliance, Plaintiff has not plausibly alleged legal entitlement to the publication of information related to specific agreements or qualifying non-binding instruments as required by 5 U.S.C. § 706(1), *see supra* at 10-13. *See also SUWA*, 542 U.S. at 63 ("The only agency action that can be compelled under the APA is action legally *required*.").

Even if Plaintiff's Complaint could move beyond these facial pleading deficiencies, as it concerns the several specific agreements identified in the Complaint, *see* Compl. ¶¶ 91, 93, there are insufficient allegations to support a claim that the text and related information is being unlawfully withheld. To the extent Plaintiff alleges that Defendants have decided to refuse to comply with the Act as to these particular agreements, it has alleged no supporting facts, including the existence of any publication decisions for these agreements or Plaintiff's entitlement to the specific information identified.

To the extent Plaintiff alleges that publication of the information related to these specific agreements is instead unreasonably delayed, it also has not alleged the necessary facts. "To state a claim for unreasonable delay, Plaintiffs must first allege that the agency failed to take a discrete agency action that it is required to take…and, second, that the delay was unreasonable." *Da*

18

*Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (citations omitted).

Plaintiff has failed to make the necessary allegations at the first prong, *see supra*, but even

assuming that it had, it could not satisfy the second prong. As explained above, publication is not

required until 120 days after the date an international agreement (that is required to be published)

goes into force, which date Plaintiff has not alleged for any of the identified agreements. The

Complaint is therefore facially insufficient to assert a claim of unreasonable delay because it

cannot plausibly support the allegation of any delay. However, assuming that entry into force has

occurred for any of these specific alleged agreements, the earliest any agreement identified by

Plaintiff could have possibly gone into force was February 1, 2025. *See* Compl. ¶ 91 (alleging

several agreements were concluded in "February 2025"). Consequently, assuming immediate

entry into force, the first possible date any publication information could have been required for

the specific agreements identified by Plaintiff was June 1, 2025, significantly less than one year

prior to the filing of Plaintiff's Complaint. *See* Compl. (filed on March 6, 2026).

"'The central question in evaluating a claim of unreasonable delay' is 'whether the

agency's delay is so egregious as to warrant mandamus.'" *Babaei v. U.S. Dep't of State*, 725 F.

Supp. 3d 20, 29 (D.D.C. 2024) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir.

2008)). To assess the reasonableness of agency delay, courts in this Circuit consider the six

*TRAC* factors:

> (1) the time agencies take to make decisions must be governed by a rule of
> reason; (2) where Congress has provided a timetable or other indication of the
> speed with which it expects the agency to proceed in the enabling statute, that
> statutory scheme may supply content for this rule of reason; (3) delays that might
> be reasonable in the sphere of economic regulation are less tolerable when human
> health and welfare are at stake; (4) the court should consider the effect of
> expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests
> prejudiced by delay; and (6) the court need not find any impropriety lurking

19

behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 30 (quoting *Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 79 (D.C. Cir. 1984)). In this case, although there is a congressionally created timeline that guides the expectation for Defendants' publication obligations under the first two *TRAC* factors, the other factors clearly weigh in favor of a determination that any delay alleged is not unreasonable. Plaintiff is not waiting on the agency to take a consequential action, like finalizing a rule or issuing a license; it seeks only the publication of additional information to augment related information that it clearly already possesses. There is no allegation, nor could there reasonably be, that human health or welfare is at stake. There is no allegation of impropriety underlying the delay. Indeed, the allegations of the Complaint support the reality recognized by the fourth *TRAC* factor that Defendants are navigating a complex statute while managing competing priorities during a time of organizational restructuring. *See* Compl. ¶¶ 80-84 (alleging Defendants experienced a major restructuring and reduction in force affecting multiple offices during the relevant period). Courts in this Circuit recognize the primary "importance of 'competing priorities' in assessing the reasonableness of an administrative delay." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). Problems that "stem[] from a lack of resources…[are] problem[s] for the political branches to work out," and "the agency is in a unique – and authoritative – position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Id.* at 1101 (citations omitted).  Under the circumstances, a delay of at most 9 months at the time of filing would not be unreasonable.

**G.  Plaintiff Does Not State A Claim for Which Relief May Be Granted as to Count III**

Plaintiff's Count III alleges that Defendants have acted contrary to law by "fail[ing] to ensure timely and equitable access to the State Department's public information" as required by

20

the Paperwork Reduction Act ("PRA"). Compl. ¶¶ 114-115. But this claim is unavailable as a matter of law.

The PRA does not create a private right of action. *Util. Air Regul. Grp. v. EPA*, 744 F.3d 741, 750 n.6 (D.C. Cir. 2014) ("[A] violation of the Paperwork Reduction Act does not afford an independent cause of action; it merely serves as a defense to an enforcement action."); *see also, e.g., Hyatt v. OMB*, 908 F.3d 1165, 1173 (9th Cir. 2018) ("[T]he PRA does not authorize a private right of action against the government.") (citation omitted); *Alegent Health-Immanuel Med. Ctr. v. Sebelius*, 34 F. Supp. 3d 160, 170 (D.D.C. 2014) ("Those federal courts that have addressed the PRA have confirmed what the plain language of the statute already makes clear: the PRA may be raised as a *defense* to an agency action, but *does not create* a private cause of action."); *Ohio Stands Up! V. HHS*, 564 F. Supp. 3d 605, 614 (N.D. Ohio 2021) (collecting cases).

Because the APA does not permit review "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," 5 U.S.C. § 702, Plaintiff cannot circumvent the limits of the PRA through an APA cause of action. The PRA provides for review only when the statute is raised defensively in an enforcement action. *See* 44 U.S.C. § 3512(b) ("The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto."). As explained above, the PRA does not permit any affirmative suits. Courts have routinely rejected attempts by plaintiffs seeking judicial review outside the PRA's statutory scheme for alleged PRA violations related to information collection. *See City of New Bedford v. Locke*, Civ. A. No. 10-10789, 2011 WL 2636863, at *9 (D. Mass. June 30, 2011), *aff'd sub nom. Lovgren v. Locke*, 701 F.3d 5 (1st Cir. 2012); *Ohio Stands Up!*, 564 F. Supp. 3d at 613 (collecting cases).

21

Additionally, even if an affirmative suit could be brought to enforce the requirements of the PRA, either directly or through the APA, the provision Plaintiff seeks to enforce does not create a duty sufficiently specific and non-discretionary to be enforceable. "Ensur[ing] that the public has timely and equitable access to the agency's public information," 44 U.S.C. § 3506(d)(1), is not a "specific unequivocal command," *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018), to take a "discrete agency action," *SUWA*, 542 U.S. at 64. The allegations of Plaintiff's Complaint, for the reasons explained above, do not demonstrate that Defendants have violated this generic policy directive. Nor does this broadly applicable requirement create an otherwise unavailable path to impose wholesale revisions on Defendants' program of compliance with the Act.

## H.   Plaintiff Is Not Entitled to Mandamus Relief Under Count IV

Plaintiff argues that it "is entitled to a writ of mandamus compelling Defendants to comply with the Act's requirements" if the Court does not otherwise grant the relief sought in Counts I-III. Compl. ¶ 123. "Mandamus is an extraordinary remedy reserved only for the most transparent violations of a clear duty to act." *In re Western Coal Traffic League*, 108 F.4th 905, 909 (D.C. Cir. 2024) (citation omitted). Mandamus requires a three-step inquiry: (1) determining whether mandamus "would protect…current or prospective jurisdiction;" (2) determining "whether the agency has a crystal-clear legal duty to act;" and (3) determining "whether judicial intervention would be appropriate as mandamus is a drastic remedy reserved for extraordinary circumstances." *Id.* (citations omitted).

In this case, Plaintiff's mandamus claim is premised on exactly the same alleged conduct as their APA claims, *see* Compl. ¶¶ 119-120, and "[t]he standard by which a court reviews…agency inaction is the same under both § 706(1) of the APA and the Mandamus Act."

22

*Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017)); *see also, e.g., Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) ("the standards for obtaining relief are essentially the same" for mandamus and 5 U.S.C. 706(1)); *SUWA*, 542 U.S. at 63-64 (explaining that § 706(1) is based on the traditional requirements of mandamus). For the reasons explained above, the Court does not have jurisdiction to hear Plaintiff's APA claims and for the same reasons it does not have jurisdiction to order mandamus. *See Western Coal*, 108 F.4th at 909 (finding that the necessary jurisdictional interest "does not arise if the final agency action to be compelled is not ultimately reviewable by the court.") (citation omitted). Plaintiff did not state a claim for relief under the APA for the reasons explained above, and its mandamus claim therefore must also fail. *See Bagherian*, 442 F. Supp. 3d at 96 (holding that the court's § 706(1) "conclusion applies with equal force to [plaintiff's] mandamus claim.").

## II.      Conclusion

For the foregoing reasons Plaintiff's Complaint should be dismissed in its entirety.

Dated: June 8, 2026                                    Respectfully submitted,

                                                       BRETT A. SHUMATE
                                                       Assistant Attorney General
                                                       Civil Division

                                                       ELIZABETH J. SHAPIRO
                                                       Deputy Branch Director
                                                       Civil Division, Federal Programs Branch

                                                       */s/Keri L. Berman*
                                                       Keri L. Berman
                                                       Trial Attorney
                                                       United States Department of Justice
                                                       Civil Division, Federal Programs Branch
                                                       1100 L St. NW
                                                       Washington, DC 20005

23

Tel: (202) 305-7538
Fax: (202) 616-8460
E-mail: Keri.l.berman@usdoj.gov

*Counsel for Defendants*