**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LAWFARE INSTITUTE,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF
STATE and MARCO RUBIO, in his official
capacity as Secretary of State,

      Defendants.

Civil Action No. 1:26-cv-798 (JUDGE)

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.      Plaintiff fails to sufficiently allege a policy or practice of non-compliance ........................ 1

II.     Plaintiff fails to sufficiently allege individual instances of non-compliance ...................... 3

III.    Plaintiff fails to establish standing for any form of relief .................................................. 5

        a.      Injury-In-Fact ......................................................................................................... 6

        b.      Redressability ......................................................................................................... 10

IV.     Lack of Final Agency Action ................................................................................................ 11

V.      Plaintiff does not state a claim for agency action unlawfully withheld or unreasonably
        delayed .................................................................................................................................. 14

VI.     Plaintiff does not state a claim under the Paperwork Reduction Act .............................. 17

VII.    Plaintiff does not state a claim for Mandamus relief ........................................................ 18

VIII.   Conclusion ............................................................................................................................ 18

# TABLE OF AUTHORITIES

CASES

*Bagherian v. Pompeo*,
    442 F. Supp. 3d 87 (D.D.C. 2020) ........................................................................ 17

*Bayala v. U.S. Dep't of Homeland Sec.*,
    246 F. Supp. 3d 16 (D.D.C. 2017) .......................................................................... 2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 2

*Chowdhury v. Blinken*,
    No. 1:21-cv-1205-RCL, 2022 U.S. Dist. LEXIS 7896 (D.D.C. Jan. 14, 2022) ....................... 15

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.,*
    846 F.3d 1235 (D.C. Cir. 2017) .............................................................................. 7

*City of Harper Woods Emps. Ret. Sys. v. Olver*,
    589 F.3d 1292 (D.C. Cir. 2009) .............................................................................. 4

*CREW v. OMB*,
    791 F. Supp. 3d 29 (D.D.C. 2025) .......................................................................... 4

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
    144 F.4th 296 (D.C. Cir. 2025) .............................................................................. 5

*Da Costa v. Immigr. Inv. Program Off.*,
    643 F. Supp. 3d 1 (D.D.C. 2022) .................................................................. 2, 14, 16

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ................................................................................................ 5

*Elec. Priv. Info. Ctr. v. IRS*,
    261 F. Supp. 3d 1 (D.D.C. 2017) ............................................................................ 7

*Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.*,
    587 F. Supp. 2d 1 (D.D.C. 2008) .......................................................................... 12

*In re Barr Labs.*, Inc.,
    930 F.2d 72 (D.C. Cir. 1991) ................................................................................ 17

ii

*Lewis v. U.S. Parole Comm'n*,
743 F. Supp. 3d 181 (D.D.C. 2024) ................................................................... 11

*Los Angeles v. Lyons*,
461 U.S. 95 (1983) ................................................................................................. 8

*Markowicz v. Johnson*,
206 F. Supp. 3d 158 (D.D.C. 2016) ................................................................... 16

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
336 F.3d 1094 (D.C. Cir. 2003) ......................................................................... 17

*Milligan v. Pompeo*,
502 F. Supp. 3d 302 (D.D.C. 2020) ............................................................ 16, 17

*Nader v. DNC*,
555 F. Supp. 2d 137 (D.D.C. 2008) ..................................................................... 8

*Nat'l Ass'n of Home Builders v. Norton*,
415 F.3d 8 (D.C. Cir. 2005) ............................................................................... 13

*Nat'l Sec. Couns. v. CIA*,
898 F. Supp. 2d 233 (D.D.C. 2012) ..................................................................... 3

*Pub. Citizen v. U.S. DOJ*,
491 U.S. 440 (1989) ............................................................................................. 9

*Sierra Club v. Thomas*,
828 F.2d 783 (D.C. Cir. 1987) ........................................................................... 12

*Steele v. United States*,
144 F.4th 316 (D.C. Cir. 2025) .......................................................................... 17

*Valero Energy Corp. v. EPA*,
927 F.3d 532 (D.C. Cir. 2019) ..................................................................... 12, 13

*Vassiliades v. Rubio*,
792 F. Supp. 3d 1 (D.D.C. 2025) ....................................................................... 16

*Waterkeeper All. v. EPA*,
853 F.3d 527 (D.C. Cir. 2017) ............................................................................. 4

*Zhang v. USCIS*,
978 F.3d 1314 (D.C. Cir. 2020) ......................................................................... 10

STATUTES

5 U.S.C. § 704............................................................................................................... 7, 14

Case-Zablocki Act, 1 U.S.C. § 112b....................................................................... *passim*

Plaintiff's response reinforces their failure to allege the necessary elements of a broad challenge to Defendants' compliance with the requirements of the Case-Zablocki Act (the "Act"), 1 U.S.C. § 112b. Despite Plaintiff's shifting and uncertain theory of the case, it is clear that Plaintiff has failed to establish standing or to state claims for which the sweeping relief it seeks may be granted.

## I.    Plaintiff fails to sufficiently allege a policy or practice of non-compliance

In its Opposition, ("Pl.'s Opp.") ECF No. 14, Plaintiff repeatedly disclaims its own allegations of Defendants' alleged decision not to comply with the requirements of the Act, Mem. in Supp. of Defendants' Mot. to Dismiss (Defs.' Br.), ECF No. 9-1 at 6; contends that a nebulous practice of non-compliance can stand in the place of a policy of non-compliance; and asserts that allegations of broad-ranging and consistent agency action are unnecessary to permit a wholesale challenge to Defendants' program under the Act. None of these arguments holds water.

Although Plaintiff suggests that the Court ignore the lack of these necessary allegations, it is central to understanding the fatal flaws of Plaintiff's Complaint and the scope of any claims that might survive. First, as Defendants explained, Defs.' Br. at 6-11, and Plaintiff appears to concede, the allegations of the Complaint do not support a conclusion that Defendants have formally or informally decided not to comply with the requirements of the Act. Plaintiff asserts that the lack of an articulated policy is irrelevant to establishing standing or the necessary elements of its causes of action, but in the absence of such a decision or policy the Complaint contains no specific factual allegations of non-compliance beyond the several individually identified potential agreements in

1

paragraphs 91 & 93 of the Complaint.[1] Contrary to Plaintiff's assertion, *see* Pl.'s Opp. at 1, as a matter of law it is not entitled to the publication of "all covered agreements and instruments." *See* Defs.' Br. at 8-10. Without individualized factual support, no permissible inference may be drawn that any particular agreement or non-binding instrument is required to be published, or that such an agreement has been or will be withheld from publication. Therefore, to the extent Plaintiff alleges there was any non-compliance during the relevant period, or will be in the future, beyond that alleged in paragraphs 91 & 93, *see infra*, such allegations are conclusory and wholly speculative. "Speculation cannot sustain a claim at the motion-to-dismiss stage." *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 16, (D.D.C. 2022), *aff'd* 80 F.4th 330 (D.C. Cir. 2023) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Second, Plaintiff argues without fully explaining that it has alleged a "practice" of non-compliance that can support a backward and forward-looking challenge to Defendants' entire program related to the Act. Plaintiff's support, however, lies in the FOIA context and is not interchangeable with the Act. Even assuming that a FOIA analysis would apply here, Plaintiff's allegations do not satisfy the applicable standard. "For a plaintiff in [a FOIA] policy or practice suit to establish standing, the plaintiff must show that "(1) the agency in question has adopted, endorsed, or implemented a policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA; and (2) *the plaintiff will suffer continuing injury due to this practice*."" *Bayala v. U.S. Dep't of Homeland Sec.*, 246 F. Supp. 3d 16, 26 n.13 (D.D.C. 2017) (quoting *Nat'l Sec.*

---

[1] As explained in Defendants' opening brief, Defendants do not concede that these "agreements" are in fact covered agreements or qualifying non-binding instruments for purposes of the Act. For the Court's convenience, however, Defendants refer to the instruments Plaintiff alleges in these paragraphs as "agreements." The same set of agreements are identified in paragraphs 9 & 10 of the Complaint.

*Couns. v. CIA*, 898 F. Supp. 2d 233, 252-53 (D.D.C. 2012)). The Complaint alleges that during the relevant period, Defendant made certain publications, *see* Compl. ¶¶ 87-88, and did not make others, *see* Compl. ¶¶ 91, 93. None of Plaintiff's allegations is specific enough to permit further inferences. The Complaint, therefore, does not allege the existence of a definitive or predictable practice of non-compliance with the Act through which the Court can permissibly infer that Plaintiff has been or will in the future be harmed by violations other than the ones specifically alleged.

Finally, throughout its Opposition, Plaintiff asks the Court to ignore the lack of any allegations of an over-arching policy of non-compliance and nevertheless permit Plaintiff to continue its suit to improve, in its view, Defendants' general compliance with the Act. Of course, such challenges to entire programs and attempts to influence the day-to-day operations of agencies are impermissible under the APA, Defs.' Br. at 14-15, a point that Plaintiff fails to address.

## II.    Plaintiff fails to sufficiently allege individual instances of non-compliance

Because there is no factual support for a policy or practice of non-compliance with the Act, none of Plaintiff's claims can withstand dismissal. Plaintiff seeks relief from the Court that reaches both backwards and forwards, but it lacks the necessary allegations to support such claims. *See* Compl. Prayer for Relief ¶¶ A, B.

Plaintiff asks the Court for relief as to three separate categories of claims. As identified by both Defendants' motion and Plaintiff's response, there are a handful of specific agreements to which Plaintiff alleges they have been denied access. *See* Compl. ¶¶ 91, 93. Separately, Plaintiff assumes without any supporting factual allegations that there are additional agreements or non-binding instruments that should have been published and were not in the relevant period. *Id.* ¶ 86-

3

89. Plaintiff also asserts, on the basis of unsupported speculation, that other agreements or non-binding instruments will be withheld in the future. *Id.* ¶ 95.

Pursuant to the allegations in paragraphs 91 & 93, the Court must assume at the motion to dismiss stage that those specifically identified agreements are in fact international agreements as defined by the Act and that they have in fact not been published. The Court may not, however, "accept inferences unsupported by facts or legal conclusions cast in the form of factual allegations," *City of Harper Woods Emps. Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009), including Plaintiff's claim that "the State Department is unlawfully refusing to post" these agreements, Compl. ¶ 91. As explained *supra*, the mere fact that a document is an agreement or non-binding instrument under the Act does not require its publication. Plaintiff has not alleged facts as to these specific instruments that would allow the Court to infer that they are being improperly withheld, such as their dates of entry into force or effectiveness and whether or not they are subject to any statutory exceptions. These alleged violations of the Act are therefore clearly distinguishable from the cases cited by Plaintiff, Pl.'s Opp. at 9, where informational injury could be presumed from an agency action that necessarily deprived the plaintiffs of information to which they had a legal entitlement. *See Waterkeeper All. v. EPA*, 853 F.3d 527, 533-344 (D.C. Cir. 2017) (holding that the challenged rule automatically reduced the provision of information to which plaintiffs were otherwise entitled under a related statute); *CREW v. OMB*, 791 F. Supp. 3d 29, 47 (D.D.C. 2025) (holding that discontinuation of a website that served as the vehicle for publication of apportionment decisions required by statute to be made public necessarily deprived plaintiffs of information to which they were entitled).[2]

---

[2] *CREW* is currently on appeal, and Defendants do not endorse its standing analysis.

4

Even were the allegations sufficient to permit an inference that the specifically identified agreements should have been published (which they are not), Plaintiff has not made such allegations for other speculative past or future failures to publish agreements. Because Plaintiff cannot allege either an unequivocal obligation to publish every agreement nor a policy or practice not to publish every agreement, it must allege the elements of an injury for every individual agreement it believes to have been improperly withheld. In terms of any other past agreements or non-binding instruments not individually specified from the period of January 2025 until March 2026 (the time of filing of the Complaint), Plaintiff has not alleged facts that would permit the Court to infer that such agreements exist, much less that they have been withheld improperly. The Court cannot infer on the basis of Plaintiff's allegations that agreements about which no facts are alleged were unlawfully withheld.[3] This claim is simply speculation. Similarly, because Plaintiff has not alleged a policy or consistent practice of noncompliance with the Act, its claim that agreements will be unlawfully withheld in the future is premised entirely on speculation. *See infra*.

### III.   Plaintiff fails to establish standing for any form of relief

A plaintiff "'must demonstrate standing for each claim [it] seeks to press' and 'for each form of relief sought,' even if the various claims are derived from similar facts or raise similar legal questions." *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 144 F.4th 296, 304 (D.C. Cir. 2025) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Plaintiff appears to contend in its Opposition that its limited, specific factual allegations and other conclusory and speculative assertions can establish standing for all of the relief it seeks, but for the reasons

---

[3] Plaintiff relies on the same generic and insufficient allegations in response to Defendants' argument that it fails to state a claim under the Act, Pl.'s Opp. at 17, and that argument fails for the same reason.

explained *supra* these allegations are plainly insufficient. Although Plaintiff now denies it, the Complaint clearly relies on an insufficiently alleged "decision to abandon" compliance with the Act to fill these gaps. Compl. ¶ 106; *see* Defs.' Br. at 6-7.

### a. Injury-In-Fact

Defendants do not contend that Plaintiff could not establish standing for an informational injury under some set of facts related to compliance with the Act, but rather that it has not alleged such facts. Informational injury requires at the first prong that a plaintiff allege that it has been deprived of information that the agency is *required* to disclose to it and has thereby suffered harm of the type Congress sought to prevent. Defs.' Br. at 7. Plaintiff has only arguably alleged the elements of informational injury as to the specific agreements identified in paragraphs 91 & 93 and even there falls short, *see supra* at 4. If the Court nevertheless draws the necessary inferences in Plaintiff's favor to establish standing with regard to those specific agreements, it still has no basis to do so with regard to Plaintiff's more general backward-looking claims or its forward-looking claims.

Plaintiff's own arguments in opposition make the insufficiency of its broader standing allegations clear. Plaintiff asserts that it has alleged the deprivation of information legally required to be disclosed only as to the specific agreements identified in paragraphs 91 & 93 of the Complaint. Pl.'s Opp. at 8. But these individual agreements cannot stand in for all others. The Act requires each agreement and qualifying non-binding instrument to be individually assessed for publication, *see supra*, and although Plaintiff ignores this aspect of the statutory and regulatory structure, it is indisputable that there is no blanket requirement of disclosure. Similarly, as explained *supra*, Plaintiff has not alleged a blanket policy or practice of non-disclosure. Stated

6

differently, the failure to publish one agreement does not permit any assumptions or conclusions to be drawn about the likelihood or appropriateness of publication of any other. Therefore, Plaintiff's allegations concerning the specifically identified agreements could only possibly establish a current informational injury and only as to those agreements. Moreover, since all the relief Plaintiff is possibly permitted to seek under the facts alleged is the publication of specific pieces of information allegedly required to be published by statute, the "FOIA offers an 'adequate remedy' within the meaning of [APA] section 704 such that [Plaintiff's] APA claim is barred." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just. ("CREW")*, 846 F.3d 1235, 1245-46 (D.C. Cir. 2017) (quoting 5 U.S.C. § 704); *see also, e.g., Elec. Privacy Info. Ctr. v. IRS*, 261 F. Supp. 3d 1, 12 (D.D.C. 2017) (quoting *CREW*, 846 F.3d at 1246) ("'FOIA offers an adequate remedy within the meaning of section 704' at least when litigants seek[] to 'gain access to…records.'").

The existence of any other past or existing injury or future injury is wholly speculative and cannot be presumed. The same is true at the second step of the informational injury inquiry. Even if the Court determines for purposes of the specifically identified agreements that Plaintiff has sufficiently alleged that it is suffering the type of harm that Congress sought to prevent, this cannot establish the same for any other agreements, past or future, that have not been specifically identified. *See* Defs.' Br. at 10.

Plaintiff also asserts that its more general allegations establish standing to challenge other past and future non-compliance, Pl.'s Opp. at 11-13, but makes little attempt to demonstrate that they satisfy the applicable standards. Plaintiff's allegations about Defendants' past behavior do not support the inference that Plaintiff was deprived of information that was legally required to be

7

published. *See supra*. Plaintiff's allegations that Defendants did not post at the frequency Plaintiff expected during the relevant period are insufficient to satisfy the first prong of the informational injury standard. Plaintiff alleges that certain agreements and non-binding instruments were published. *See* Compl. ¶¶ 87-89. Plaintiff also alleges that the specifically identified agreements were not published during the same period. *See* Compl. ¶¶ 91, 93. Whether there were any other agreements or qualifying non-binding instruments that were legally required to be published and were not during the relevant period is not alleged in the Complaint and cannot be inferred from the allegations concerning the intermittent nature of Defendants' posting. Similarly, Plaintiff's assertion that it has made "direct allegations relating to future noncompliance," citing only to paragraph 95 of its Complaint, Pl.'s Opp. at 13, also cannot be the basis for forward-looking standing based on informational injury. In the absence of plausible allegations of an across-the-board policy, formal or informal, not to publish agreements and non-binding instruments, Plaintiff's allegations concerning any future agreements are hypothetical and premised on pure speculation. *See* Compl. ¶ 95. Plaintiff's own allegations establish compliance, if allegedly inconsistent, with the Act during the relevant period. *See, e.g., id.* ¶ 94. Conversely, Plaintiff alleges no specific facts to support its claim that future agreements will be withheld, including in relation to the several "recent and impending agreements" identified in the Complaint. *Id.* ¶ 95. Moreover, Plaintiff's request for a forward-looking "injunction to 'follow the law' in the absence of some allegedly imminent violation of the law is inappropriate." *Nader v. DNC*, 555 F. Supp. 2d 137, 152 (D.D.C. 2008) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). Plaintiff is seeking different kinds of relief for alleged "continuing" harms, related to the specifically identified agreements, and alleged "imminent" harms, related to unidentified future agreements,

8

and it must separately establish standing for both, *see supra*.

Plaintiff acknowledges but attempts to brush away the critical fact that the Act contains many exceptions and conditions to the publication requirement, *see supra.* Plaintiff's assertion that *Public Citizen v. United States Dep't of Just.* "rejected a nearly identical argument" is patently wrong. Pl.'s Opp. at 12. In *Public Citizen*, the Court held that where defendants refused to comply at all with the requirements of a statute, including a disclosure provision, the *redressability* of plaintiffs' claims was not eliminated by the fact that the disclosure of some information could lawfully be refused. 491 U.S. 440, 450 (1989). Although there are also redressability problems in this case, *see infra* and Defs.' Br. at 12-13, the relevance of the Act's many exceptions and conditions here is whether an injury can be established. Unlike in *Public Citizen*, by Plaintiff's admission Defendants are, at minimum, complying at least in part with the very obligations of the Act that Plaintiff asserts are being violated. Thus, Plaintiff can only successfully allege injuries by individual failures to meet the obligations of the Act.

Finally, Plaintiff's assertion that the D.C. Circuit rejected the requirement that plaintiffs allege downstream consequences of informational injuries under all circumstances is incorrect. Plaintiff's selective citation to *Campaign for Accountability v. Dep't of Just. ("CFA")*, 155 F.4th 724 (D.C. Cir. 2025), obfuscates the fact that the circumstances of that case are substantively distinguishable. *CFA* is a FOIA case and turns on the holding that a "FOIA plaintiff need only show 'that they sought and were denied specific agency records,'" to establish standing through an informational injury. 155 F.4th at 733 (quoting *Pub. Citizen*, 491 U.S. at 449). Plaintiff has not identified a similar rule of law applicable to the Act, and, if that FOIA rule were applicable, Plaintiff has not alleged that it affirmatively sought and was denied any information under the

9

Act.[4] Therefore, the standing analysis of *CFA* is simply inapposite, *see id.* at 733-35, Plaintiff is not excused from demonstrating adverse effects, and it has failed to make sufficient allegations to establish those effects, Defs.' Br. at 7-11.

### b. Redressability

Plaintiff's position on redressability is legally incorrect and fails to account for the fact that the Plaintiff is the "master of its own complaint." *Zhang v. USCIS*, 978 F.3d 1314, 1325 (D.C. Cir. 2020) (cleaned up). It is apparent on the face of the statute and regulations that the information necessary to make publications consistent with the requirements of the Act often originates from or is in the possession of government entities outside of the State Department. Defs.' Br. at 13. Plaintiff could have, but did not, allege facts indicating that the specific information it seeks is within the custody and control of the State Department. Even if the Court infers that such information is in the possession of the Defendants for the specific individual agreements Plaintiff alleges in paragraphs 91 & 93, which it should not, there is simply no basis to do so for any other unspecified past or future agreements.

Plaintiff also could have, but did not, bring suit against other entities it alleges have custody and control of the specific information that it seeks. *See infra*. Instead, Plaintiff again rests its argument on baseless speculation. *See* Pl.'s Opp. at 14 ("[A] court order requiring State to come into full compliance with the Case Act's disclosure obligations would likely induce the EOP or other federal agency to execute their transmission obligations."). And rather than seeking to correct

---

[4] Defendants acknowledge that a specific denial is not necessary to establish informational injury in all circumstances, *see, e.g., Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 685-86. However, it is a requirement of the analysis on which Plaintiff seeks to rely for its argument.

its deficient pleading, Plaintiff boldly asserts that the Court should "exercise [its] inherent or statutory powers to effectuate its orders" after a decision on the merits rather than addressing all issues of jurisdiction at the outset as required. *Id.*

## IV.    Lack of Final Agency Action

Plaintiff's assertion that its claim challenges final agency action fails for the same reason that it cannot establish the injury necessary for standing. Although Plaintiff avoids stating so explicitly, by necessity it is arguing that the final agency actions at issue are Defendants' alleged failures to publish the individually identified agreements. *See* Pl.'s' Opp. at 15 ("[T]he existence or non-existence of [an across-the-board] policy is immaterial to whether State failed to act within the statutory timeframe and cannot excuse State's noncompliance with its statutory obligations."). Plaintiff also impliedly concedes, as it must, that there is no "unequivocal statutory duty" to publish every international agreement and non-binding instrument by stating that the obligation applies to "covered agreements and instruments." Pl.'s Opp. at 15. Because of the many exceptions and conditions present on the face of the statute and implementing regulations, whether an agreement or instrument must be published and when is specific to each individual document. *See* Defs.' Br. at 8-10. Plaintiff has in effect conceded that it seeks to assemble a patchwork of unrelated individual instances of alleged non-compliance to permit wholesale improvement of Defendants Case Act program, but the Supreme Court has explicitly rejected that theory of final agency action. Defs.' Br. at 14-15; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-94 (1990)).

Separately, while Plaintiff is correct that agency inaction that is in practical effect a decision can constitute final agency action, *see Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 198 (D.D.C. 2024), that analysis does not track onto the situation alleged. To satisfy the

11

requirement of final agency action, a plaintiff must allege both that an action or functionally equivalent inaction is the consummation of the agency's decision-making process and that legal consequences flow from that decision or non-decision. Defs.' Br. at 13-14; *see also Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.*, 587 F. Supp. 2d 1, 10 (D.D.C. 2008) (holding that a plaintiff must make a showing that a failure to act is "the functional equivalent of final agency action."). Since there are no allegations to support an overarching policy decision or consistent practice of non-compliance, the Complaint at most alleges that Defendants have "decided" not to publish the specific agreements alleged in paragraphs 91 & 93. For the reasons explained *supra*, Plaintiffs have not alleged sufficient facts to permit the inference that Defendants have impermissibly failed to publish even these agreements. Even if they had, however, individual alleged decisions not to provide specific information could only, at most, "determine rights or obligations" as to that specific information. As Defendants explained, individual publication decisions are not akin to the grant or denial of a license or other typical agency action with legal effects. Defs.' Br. at 15-17; *see also Hi-Tech Pharmacal*, 587 F. Supp. 2d at 10 (quoting *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987)) ("Judicial review of an agency's failure to act under § 706(2) is authorized, then, 'when administrative inaction has the same impact on the rights of the parties as an express denial of relief.'"). Whether or not Plaintiff receives a certain piece of information has no bearing on Defendants' obligations under the Act or Plaintiff's entitlement, except, arguably, as to that piece of information. *Id.* As explained, that narrow type of alleged injury can be adequately remedied under FOIA.

Plaintiff's attempt to distinguish *Valero Energy Corp. v. EPA*, 927 F.3d 532, 536 (D.C. Cir. 2019), illustrates the fatal flaw in their argument. *See* Pl.'s Opp. at 16-17. The D.C. Circuit's

statement of the law concerning the second prong of the final agency action test is not specific to the particular type of agency action at issue in that case or the other cited cases. It is indisputably the case that agency action must have "actual legal effect" in order to be final for purposes of the APA. *Valero Energy Corp. v. EPA*, 927 F.3d at 536; *see also, e.g.*, *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) ("[I]f the practical effect of the agency action is not a certain change in the legal obligations of a party, the action is non-final for purposes of judicial review.").

Alleged individual failures of compliance within Defendants' program under the Act simply do not have any effect at all beyond the relevant individual agreements. Plaintiff asserts that requiring an actual legal impact in this context would "result in a fundamental shift in federal jurisprudence relating to…government information," Pl.'s Opp. at 16, but fails to contend with the distinction between Plaintiff's theory of the case, which it appears to be abandoning, and what its allegations can actually sustain. Defendants do not contend that an actual decision or policy of across-the-board non-compliance with some aspect of a disclosure law could not be final agency action. Indeed, this is exactly what is challenged in many of the cases cited by the parties. But, despite Plaintiff's shifting position, it is clear that there is no such decision or policy in this case. Even viewing the factual allegations of the Complaint in the light most favorable to Plaintiffs, Defendants sometimes complied with the Act during the relevant period. There is thus no factual basis from which to infer a decision representing the consummation of the agency's decision making process with regard to compliance, and consequently no change to the rights, obligations, or legal relationship of the parties. *See* Defs.' Br. at 16-17. The Court may conclude, although it should not, including because FOIA would provide adequate relief for such claims, that the alleged

13

failures to publish the specific agreements identified by Plaintiff in paragraphs 91 & 93 constitute discrete final agency actions under the APA, but even if it does the effect of those particular alleged inactions would not reach beyond those agreements. *See id.*

Plaintiffs do not respond at all to Defendants' position that final agency action is impossible for Plaintiffs' forward-looking claims in the absence of an alleged decision or policy of non-compliance, Defs.' Br. at 17, and have therefore forfeited that argument.

## V.   Plaintiff does not state a claim for agency action unlawfully withheld or unreasonably delayed

Even if Plaintiff's Complaint could survive the threshold issues discussed *supra*, it fails to state a claim for agency action unlawfully withheld or unreasonably delayed. For the same reasons discussed above, to the extent Plaintiff could pursue these claims at all in the face of the insufficient allegations and § 704 bar, it could only do so in relation to the specifically identified agreements in paragraphs 91 & 93 because they are the only alleged agreements for which the Complaint alleges any facts about their publication. Plaintiff appears to agree, as its only response to Defendants' arguments about its failure to state a claim for agency action unlawfully withheld is to assert once again that it has made sufficient allegations in paragraphs 91 & 93. Pl.'s Opp. at 17. Even if the Court concludes that these allegations are sufficient to withstand a motion to dismiss as to these individual agreements, they are plainly insufficient to state a claim for any further-reaching relief. *See* Defs.' Br. at 17-18. However, even as to these individual agreements Plaintiff has not alleged enough facts for unlawful withholding. *See supra* at 4.

As it concerns Plaintiff's unreasonable delay claim, precedent recognizes that unreasonable delay claims may be decided at the motion to dismiss stage when sufficient facts are available. *See Da Costa,* 643 F. Supp. 3d at 12. For the reasons explained in Defendants' opening brief, that

14

analysis can be conducted on the face of the Complaint. Defs.' Br. at 17-19. Plaintiff's suggestion that the Court should await discovery is unsupported. First, Plaintiff brings suit under the APA, so the case would be decided on the basis of an administrative record, not discovery. Second, the example Plaintiff provides for discovery it believes would be helpful or warranted, Pl.'s Opp. at 18, is inconsistent with this Circuit's precedent. The relevance of "impropriety" in the final *TRAC* factor is whether there is some bad faith motivating the alleged delay. *See Chowdhury v. Blinken*, No. 21-cv-1205, 2022 U.S. Dist. LEXIS 7896, at *12 (D.D.C. Jan. 14, 2022). "[T]he mere fact of a delay is insufficient to show impropriety." *Id.* at * 13. Defendants do not contend, nor would they likely have possession of information to support (even if discovery were permissible), that any other government entity is engaging in any deliberate wrongdoing to evade the requirements of the Act. The issue of custody and control over the information relevant to publication is neutral and exists on the face of the statute. Defs.' Br. at 12-13. The potential impact of this statutory structure on redressability, *see supra*, has no relationship to Plaintiff's proposed fishing expedition premised exclusively on speculation. There are no allegations in the Complaint related to impropriety and no justification for putting off the unreasonable delay analysis to search for such information.

Assuming for purposes of this argument that the allegations of the Complaint are sufficient to even engage in the "unreasonable delay" analysis, an assessment of the *TRAC* factors weighs in favor of the Defendants. As Defendants acknowledged in their opening brief, the first two factors weigh in favor of the Plaintiff because there is a specific timeline set out in the Act, Defs.' Br. at 20. But Plaintiff is wrong to suggest that "consideration of the remaining factors is likely unnecessary," Pl.'s Br. at 19. The *TRAC* analysis exists specifically to prevent the type of

15

incomplete assessment Plaintiff suggests. *See, e.g., Da Costa*, 643 F. Supp. 3d at 12 (explaining that the *TRAC* factors "are intended to provide useful guidance," and "[e]ach case must be analyzed according to its own unique circumstances….") (citations omitted). Plaintiff is also wrong to conflate the third and fifth factors where they admit that "human health and welfare are not at stake," Pl.'s Br. at 19, so nothing at all exists on their side of the balance for the third factor. In terms of the fifth factor, Plaintiff improperly invokes the "role of Congress and the interests of the American people," but it may not speak to those interests. Plaintiff may only represent its own alleged harm from the delay in obtaining information under the Act, which is insufficiently alleged as to the specifically identified agreements, *see* Defs.' Br. at 10-11. As explained above, there is no allegation of impropriety so the sixth factor is neutral.

On the other side of the balance, courts in this Circuit have acknowledged that the fourth *TRAC* factor, the effect of judicial intervention on agency activities of higher or competing priority, "carries the greatest weight in many cases." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020). Plaintiff faults Defendants for not "identify[ing] a single competing agency priority that would suffer if it were ordered to expedite its publications," Pl.'s Opp. at 19, but at this stage only the contents of the Complaint and matters of judicial notice may be considered, *Vassiliades v. Rubio*, 792 F. Supp. 3d 1, 10 (D.D.C. 2025). Notwithstanding that limitation, Defendants identified their significant resource and staffing constraints as alleged in Plaintiff's Complaint, Defs.' Br. at 20, and the Court may take notice of Defendants' many substantially more urgent and substantive activities as the principal foreign affairs arm of the United States Government. *See Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016) ("The Court takes judicial notice of information posted on official public websites of government agencies."). "[D]elays stemming

16

from resource-allocation decisions simply do not lend themselves to 'judicial reordering of agency priorities.'" *Milligan,* 502 F. Supp. 3d at 319 (quoting *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020)) (cleaned up).

In sum, the reasonableness of any delay depends "upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). The "agency is in a unique – and authoritative – position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr Labs.*, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991). Although the first two factors weigh in favor of Plaintiff's assertion that delay of a few months as to publication of the specifically identified individual agreements, if sufficiently alleged, is unreasonable, the balance decidedly tips in favor of Defendants. It is clear on the face of the statute and regulations that publication is a complex task and clear on the face of the Complaint that Defendants have faced significant resource constraints in the relevant timeframe. *See supra*. If Plaintiff has in fact sufficiently alleged that the specifically identified agreements are delayed, that delay is not unreasonable. Defs.' Br. at 19-20.

## VI.     Plaintiff does not state a claim under the Paperwork Reduction Act

The Paperwork Reduction Act ("PRA") does not provide a cause of action and the APA may not be used to circumvent the limitation on affirmative suits imposed by the statute. *See* Defs.' Br. at 20-22. The cases relied upon by Plaintiff are inapposite. In *Steele v. United States*, the D.C. Circuit held that notwithstanding the limitations of the PRA, including explicit jurisdictional bars, the Court "retain[s] the responsibility to decide whether the agency acted within the scope of its statutory authority." 144 F.4th 316, 322-23 (D.C. Cir. 2025). There is no such claim here. Plaintiff

17

does not seek to have the Court determine the bounds of Defendants' authority but rather to compel an exercise of that authority. The other cases cited by Plaintiff assumed the applicability of the APA to PRA challenges without deciding and therefore lack persuasive effect.

Even if an APA claim circumventing the intention of the PRA is allowed, the particular provision Plaintiff seeks to enforce does not satisfy the relevant APA standard. Defs.' Br. at 22. The PRA's general admonition to ensure timely and equitable access to information is facially insufficient to establish a discrete and non-discretionary duty that can be the basis for a contrary to law claim under the APA. Plaintiff impliedly concedes this by asserting that the PRA provision must be given the necessary specificity by incorporating the specifics of the Act. Plaintiff's argument that the disclosure provisions of the Act can be engrafted onto the PRA provision and thereby transform it from a general statement of policy into an enforceable obligation is contrary to APA jurisprudence, unsupported by any citation, and cannot be sustained.

## VII.    Plaintiff does not state a claim for Mandamus relief

Plaintiff does not explain how it could be entitled to mandamus relief if relief under the APA were precluded. For the reasons explained in Defendants opening brief, Plaintiff has failed to state a claim for mandamus relief and the Court lacks jurisdiction to order such relief in this case. Defs.' Br. at 22-23.

## VIII.   Conclusion

For the reasons stated herein, the Compliant should be dismissed in its entirety.

Dated: July 13, 2026                              Respectfully Submitted,

                                                  BRETT A. SHUMATE
                                                  Assistant Attorney General

18

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch

*/s/ Keri L. Berman*

KERI L. BERMAN
Trial Attorney
 United States Department of Justice
 Civil Division, Federal Programs Branch
 1100 L Street, N.W.
 Washington, DC 20005
 Tel: (202) 305-7538
 Fax: (202) 616-8460
 Email: keri.l.berman@usdoj.gov

*Counsel for Defendants*

19